UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VIRGINIA HAYES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-1798 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 23 |
| | : | | |
| D.C. PUBLIC SCHOOLS *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES & COSTS

**I. INTRODUCTION**

This matter comes before the court on the plaintiff's motion for attorney's fees and costs. The plaintiff is the grandmother and legal guardian of a minor child who is entitled to the protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.* She commenced this action seeking $4,101.15 in attorney's fees that she incurred while prosecuting an administrative claim pursuant to the IDEA. The defendants, the District of Columbia Public Schools ("DCPS") and the District of Columbia, concede that the plaintiff prevailed in the underlying merits hearing, but dispute the reasonableness of the requested fees.

Because the plaintiff is the prevailing party and because some of the requested fees are reasonable, the court grants in part the plaintiff's motion for attorney's fees and costs. Because certain fee requests by the plaintiff are inappropriate and deficient, however, the court denies in part the plaintiff's motion. Accordingly, the court grants the plaintiff an award of reduced fees.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff's minor grandchild is enrolled in the District of Columbia Public Schools ("DCPS") and is entitled to the protections afforded by the IDEA. Am. Compl. ¶ 2. In December 2008, the plaintiff filed an administrative due process complaint against the DCPS and the District of Columbia alleging that the defendants had failed to provide a Free and Appropriate Public Education ("FAPE") to her grandchild as required under the IDEA. *Id.* at ¶ 4. After a hearing on the merits in January 2009 ("January 2009 merits hearing"), the hearing officer issued a Hearing Officer Determination ("HOD") granting the plaintiff the relief that she had been seeking. *Id.* at ¶ 2. During the course of such administrative proceedings, the plaintiff had been represented by the Law Offices of Christopher N. Anwah. *Id.* at 4.

The plaintiff then submitted an IDEA fee petition for attorney's fees and costs to the defendants, for a total amount of $5,323.25. Pl.'s Mot. at 1. The defendants only reimbursed the plaintiff in the amount of $923.75, however, creating a difference of $4,101.15 between what the plaintiff believed she was owed and what the defendants had paid.[1] *Id.* at 2.

In August 2009, the plaintiff filed an action in the Superior Court of the District of Columbia, seeking to recover the $4,101.15 outstanding balance on her IDEA fee petition. Am. Compl. ¶ 4. The following month, the defendants removed the action to this court. *See* Notice of Removal. The plaintiff then filed an amended complaint in July 2010. *See generally* Am. Compl. Subsequently, after attempts at mediation proved unsuccessful, the plaintiff filed the instant motion for attorney's fees and costs. *See generally* Pl.'s Mot. In her amended complaint, the plaintiff continues to seek the $4,101.15 that she contends is still due. Am. Compl. ¶ 4. With

---

[1] The plaintiff conceded that certain charges, which total $298.35, are not owed. Pl.'s Mot. at 7. The final attorney's fee award will therefore be reduced accordingly.

this motion ripe for consideration, the court turns to the parties' arguments and to the applicable legal standards.

## III. ANALYSIS

### A. Legal Standard for Attorney's Fees Under the IDEA

Federal Rule of Civil Procedure 54(d) requires that a party seeking "attorney's fees and related non-taxable expenses" must file a motion with the court. FED. R. CIV. P. 54(d)(2)(A). The motion "must specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii). It must also state the amount sought in attorney's fees, or provide a fair estimate of such amount. FED. R. CIV. P. 54(d)(2)(B)(iii); *see also Herbin v. District of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorney['s] fees" if they are the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). Thus, when the court determines an appropriate amount of attorney's fees, it must engage in a two-step inquiry. First, the court must determine whether the party seeking attorney's fees is the prevailing party. *Id.* A prevailing party "is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court should determine whether the attorney's fees sought are reasonable. 20 U.S.C. § 1415(i)(3)(B). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context). An attorney's hourly rate for IDEA actions in the District of Columbia is typically considered reasonable if it conforms to the *Laffey* Matrix, a chart of hourly rates based upon attorneys' respective years of experience. *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25 (D.D.C. 2004)); *see also* 20 U.S.C. § 1415(i)(3)(C) (stating that attorney's fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

The plaintiff bears the burden of demonstrating that the number of hours that its counsel has spent on a particular task is reasonable. *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed [in order] to 'permit the District Court to make an independent determination [of] whether or not the hours claimed are justified.'" *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). Once the plaintiff has provided the court with such information, a "presumption arises [in the plaintiff's favor] that the number of hours billed is reasonable[,] and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours." *Herbin*, 2006 WL 890673, at *5.

### B. The Court Grants in Part and Denies in Part the Plaintiff's Motion for Attorney's Fees

### 1. The Reasonableness of the Number of Hours Billed by the Plaintiff's Counsel[2]

#### a. Itemizing Each Attorney's Respective Tasks

The plaintiff has submitted to the court an invoice for $4,101.15 that outlines her attorney's fees and costs. Pl.'s Mot., Ex. A, Invoice of Billable Hours. The defendants allege that the plaintiff's fee petition is unacceptably vague because it does not identify the individual attorney who performed each respective task. Defs.' Opp'n at 6-7. The defendants argue that by neglecting to delineate the work that each attorney performed, the plaintiff has failed to adhere to the DCPS Guidelines for the Payment of Attorney Fees in IDEA Matters ("DCPS Guidelines"), which provide specific instructions as to how to submit a fee petition. *Id.* As a result, the defendants assert, the court lacks "sufficient information to determine whether the claimed rates are appropriate for the work that was performed." *Id.* at 6.

The plaintiff counters that she complied with the DCPS Guidelines by including a "user summary" at the end of her invoice. Pl.'s Reply at 3. The summary lists the names of all staff members who worked on the case, the total number of hours that each expended on the case, each staff member's respective hourly rate and the total dollar amount that each billed. *Id.* The plaintiff further contends that the DCPS Guidelines do not require identification of each individual attorney who performed specific legal activities, and that the defendants have offered no legal authority to establish this purported requirement. *Id.* at 7.

---

[2]  As a threshold matter, the court notes that the defendants do not dispute that the plaintiff is the prevailing party in the underlying IDEA suit. *See generally* Defs.' Opp'n at 1. Indeed, because the plaintiff succeeded on her claim in the merits hearing, she is the prevailing party and is therefore entitled to recover reasonable attorney's fees. *See Buckhannon*, 532 U.S. at 603.

A fee application must provide sufficient detail so as to allow the court to make an independent determination of whether the charges are reasonable. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. The plaintiff's invoice "need not present the exact number of minutes spent[,] nor the precise activity to which each hour was devoted[,] nor the specific attainments of each attorney." *Holbrook*, 305 F. Supp. 2d at 45 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327); *see also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006). Yet a fee petition that does not identify the specific attorneys who performed each respective activity is considered insufficiently detailed. *Gray v. District of Columbia*, 2011 WL 1561553, at *2 n.5 (D.D.C. Apr. 26, 2011). Without such information, the court is unable to evaluate whether an attorney's hourly billable rate and billed hours are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).

Here, the plaintiff's failure to match the tasks with the respective attorneys who undertook them creates ambiguity as to whether the task was performed by an attorney or a paralegal. Moreover, if the task was indeed carried out by an attorney, the plaintiff's failure to identify that person by name leaves uncertainty as to his or her level of experience. Because the fee petition fails to provide sufficient detail as to who undertook each individual activity, the court cannot ascertain whether the hourly billing rate for each respective task is reasonable, and therefore cannot determine whether the plaintiff's overall request for attorney's fees is reasonable.

Even if the plaintiff's fee petition is somewhat deficient, however, complete denial of fees is inappropriate. *See Jordan v. Dep't of Justice*, 691 F.2d 514, 518-19 (D.C. Cir. 1982)

(holding that complete denial of fees should be reserved for only extreme situations, such as when the petitioner offers no affidavits or timesheets, or when the application is filed in bad faith). The court may, instead, reduce the overall fee award to account for such deficiencies. *See Hensley*, 461 U.S. at 433 (noting that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004) (reducing overall fee award by fifty percent where documentation of time records was deficient); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (applying an overall reduction where time entries were inadequate). The court accordingly reduces the overall fee award by twenty-five percent to account for these and, as indicated below, other deficiencies in the plaintiff's fee petition.

### b. Whether Charges for Activities Are Too Remote in Time From the Merits Hearing

The plaintiff requests attorney's fees for activities that occurred between April 2, 2008 and November 17, 2008. Pl.'s Mot. at 7. The defendants contend that fees for these activities should not be allowed because such activities occurred eight months prior to the January 2009 merits hearing in which the plaintiff received a favorable HOD. Defs.' Opp'n at 22. The defendants therefore assert that 16.77 hours should be disallowed from the plaintiff's fee petition, thereby reducing the total accordingly. *Id.* The plaintiff responds that these legal activities for which she was charged are directly related and in close proximity to the January 2009 merits hearing. Pl.'s Mot. at 7-8, 11; Pl.'s Reply at 10-11. According to the plaintiff, she retained her attorneys on April 2, 2008, who subsequently began monitoring whether the defendant was providing a "free and appropriate education" to the minor child, pursuant to the IDEA. Pl.'s Mot. at 7-8. The plaintiff notes that if her attorneys had not been observing whether

7

her granddaughter was receiving a FAPE, they would not have discovered the violation that resulted in the merits hearing. *Id.* Furthermore, the elderly plaintiff asserts that her age, education and economic status required the attorneys to spend extra time assisting her with the case, as "she was in no position to understand" on her own the student's rights under the IDEA. *Id.* at 8. The plaintiff attaches the HOD as evidence of the complexity of the administrative proceeding, in order to justify her attorney's charges. *Id.* at 8; Pl.'s Mot., Ex. C, Hearing Officer's Determination.

Charges incurred a few months prior to an IDEA merits hearing are not excessively remote as to be excluded from an attorney's fee award. *See Cox v. District of Columbia*, 754 F. Supp. 2d 66, 77-78 (D.D.C. 2010) (holding that charges for work done less than five months before an IDEA due process hearing were reasonable); *Lax v. District of Columbia*, 2006 WL 1980264, at *4 (D.D.C. July 11, 2006) (holding that "time spent over the course of a year for a particular client" is reasonable, because the plaintiffs tied each charge to a subsequent hearing and it often takes up to a year for an administrative IDEA case to be resolved). The plaintiff here demonstrates the relevance of the disputed charges to the underlying administrative proceeding, and that these charges were incurred only eight months before the merits hearing. Accordingly, the court concludes that the hours expended prior to the merits hearing are reasonable.

### 2. The Reasonableness of the Plaintiff's Attorneys' Respective Hourly Rates

#### a. The Court Properly Applies the *Laffey* Matrix to Determine Fee Awards

The plaintiff urges the court to adopt an "adjusted" version of the *Laffey* Matrix when calculating the proper attorney hourly rate because it is a better representation of prevailing market rates than the standard version. *See* Pl.'s Mot. at 6-7; Pl.'s Reply at 4. The defendants,

however, assert that the plaintiff is not entitled to *Laffey* rates, adjusted or otherwise, because IDEA proceedings are "not the type of complex federal litigation for which *Laffey* rates were adopted." Defs.' Opp'n at 9. Instead, the defendants insist, the DCPS Guidelines contain the appropriate fee schedule that should be applied ("DCPS fee schedule"). *Id.* at 9. The plaintiff counters that the DCPS fee schedule is "grossly antiquated," and that it does not allow for any upward adjustment to account for standard of living increases or inflation. Pl.'s Mot. at 6.

This court has previously held that attorney's fees in IDEA actions are presumptively reasonable if they conform to the *Laffey* Matrix. *See Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 102 (D.D.C. 2010) (holding that the *Laffey* Matrix is the proper formula to determine the prevailing market rate for legal services rendered in connection with IDEA administrative proceedings). Other members of this court have reached similar conclusions. *See, e.g.*, *Brown v. Jordan P.C.S.*, 539 F. Supp. 2d 436, 438 (D.D.C. 2008) (holding that the plaintiffs' hourly rates were reasonable because they conformed to the updated *Laffey* Matrix and were customary for similar cases); *Kaseman*, 329 F. Supp. 2d at 25-26 (holding that the plaintiffs' counsel's rate was reasonable because it was below the applicable *Laffey* Matrix rate); *Nesbit v. District of Columbia*, Civ. No. 01–2429 (D.D.C. Nov. 4, 2003) (Order at 1) (holding that an hourly billing rate in accordance with the *Laffey* Matrix was reasonable).

Furthermore, this court has already rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirms that IDEA cases are sufficiently complex to allow the application of the *Laffey* Matrix. *See Jackson*, 696 F. Supp. 2d at 102 (holding that IDEA administrative proceedings, which require expert testimony regarding whether a student has been denied a FAPE, are sufficiently complex to warrant

9

application of the *Laffey* Matrix); *Nesbit*, Civ. No. 01–2429, (D.D.C. Nov. 4, 2003) (Order at 1) (refusing to create an exception to the application of the *Laffey* Matrix for IDEA litigation); *see also Cox*, 754 F. Supp. 2d at 76 (holding that counsel must have specialized knowledge of the bureaucracy and practices of DCPS to handle IDEA cases). Similarly, this court has rejected the application of the DCPS fee schedule to determine prevailing attorney rates for IDEA cases. *See Jackson*, 696 F. Supp. 2d at 103 (declining to apply the DCPS fee schedule because the defendant provided no evidence to show how it represented prevailing market rates and because precedent supported application of the *Laffey* Matrix). The defendants here have not offered any evidence to indicate the methodology by which the DCPS fee schedule was calculated, nor why it should be applied in this case. *See Cox*, 754 F. Supp. 2d at 76 (holding that the *Laffey* Matrix should apply because the defendant offered "no reasoned defense for its own Guidelines"). The court therefore declines to apply the DCPS fee schedule to this case.

With respect to the plaintiff's request to apply an adjusted *Laffey* Matrix, the court notes that two versions of the *Laffey* Matrix exist in the District of Columbia: the "U.S. Attorney's Office *Laffey* Matrix" and the "Adjusted *Laffey* Matrix." *See Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *see also Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (noting that "plaintiffs may point to such evidence as an updated version of the *Laffey* Matrix or the U.S. Attorney's Office Matrix, or their own survey of prevailing market rates in the community"). The U.S. Attorney's Office Matrix "calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the Consumer Price Index ("CPI") for the Washington, D.C. area for the prior year." *Smith*, 466 F. Supp. 2d at 156; *see also* U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, available at

10

http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011).
By contrast, the Adjusted *Laffey* Matrix, offered by the plaintiff, "calculates the matrix rates for each year by using the legal services component of the CPI rather than the general CPI on which the U.S. Attorney's Office Matrix is based." *See Smith*, 466 F. Supp. 2d at 156 (quoting *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000)).

Although both matrices have been approved for use as evidence of prevailing market rates, this court has consistently applied the U.S. Attorney's Office *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 104. Accordingly, the court adopts the U.S. Attorney's Office version of the *Laffey* Matrix in order to determine the prevailing market rate for attorney's fees in this case.

### b. Applicable Hourly Rates for the Plaintiff's Attorneys

The defendants offer some additional objections to the plaintiff's requested hourly billing rates. First, they contend that because the plaintiff's fee petition is impermissibly vague, they are unable to determine the reasonableness of the rates that were used to calculate the amount of requested attorney's fees. Defs.' Opp'n at 6-7. Second, the defendants insist that the plaintiff has failed to meet her burden of establishing her counsel's qualifications and experience, asserting that the only pieces of evidence that she has provided are "conclusory allegations, insufficient to support an award" of attorney's fees. *Id.* at 7-8. The defendants further argue that the sworn declaration from one of the plaintiff's attorneys does not include information about whether the plaintiff's attorneys have been admitted to the District of Columbia Bar ("D.C. Bar"), nor any indication of the prevailing market rates that are enjoyed by special education attorneys. *Id.* at 8.

The plaintiff responds that the "user summary" at the end of her invoice provides sufficient detail by listing the name of each staff member who worked on the case, the total number of hours that each expended, their respective hourly rates and the total dollar amount that each billed. Pl.'s Reply at 3. Furthermore, she contends that her attorney's sworn declaration contains sufficient proof of her counsel's qualifications, and that she has satisfied her burden of establishing the reasonableness of her requested rates. *Id.*

A party that requests attorney's fees must submit evidence showing "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *See Covington*, 57 F.3d at 1107 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The prevailing market rate in the *Laffey* Matrix is "but one of the elements needed to establish the reasonableness of a billing rate sought in a fee application." *Jackson*, 696 F. Supp. 2d at 104; *see also Covington*, 57 F.3d at 1109 (holding that plaintiffs may provide evidence to supplement the *Laffey* Matrix, including fees awarded to attorneys with similar qualifications in comparable cases). The prevailing market rate "provide[s] merely a starting point" for determining the reasonableness of a billing rate. *Jackson*, 696 F. Supp. 2d at 104. The fee applicant should also submit evidence, including affidavits, regarding her counsel's general billing practices and such counsel's skill, experience and reputation. *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326. Once the plaintiff has met this burden, the defendant may then rebut the presumption of reasonableness by offering "specific contrary evidence." *Covington*, 57 F.3d at 1109.

In this case, the plaintiff submitted a sworn declaration from her attorney in support of her requested rates. *See* Pl.'s Mot., Ex. B, Decl. of Qualifications and Experience of Individual

Special Educ. Legal Providers Employed by the Chris Anwah Law Firm ("Adewusi Decl."). The declaration attests to the attorneys' respective educational background, bar admission status and special education experience and training. *See generally id.* The plaintiff also notes that her attorneys' law firm has been "practicing special education law exclusively since 1997." Pl.'s Mot. at 4. Although the plaintiff did not submit evidence that described her attorneys' standard billing practices, the information that she did submit regarding their qualifications and experience in litigating IDEA cases sufficiently satisfies her burden of proving that her requested rates are reasonable. *See, e.g.*, *Alfonso*, 464 F. Supp. 2d at 6-7 (holding that the plaintiffs met their burden by "highlighting the experience and qualifications of plaintiffs' counsel's firm and the firm's long history of practice in this area of law"); *Kaseman*, 329 F. Supp. 2d at 26 (holding that the plaintiff established the reasonableness of her requested rate even though she did not attest to the "actual rates charged by lawyers who do similar work" nor to the "the reputations of plaintiffs' counsel").

By contrast, the defendants have not provided specific evidence to rebut this presumption of reasonableness, such as documentation of rates that are awarded in similar cases. *See Covington*, 57 F.3d at 1109-10 (stating that "in the normal case the [defendant] must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate" (citing *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326)); *Brown*, 539 F. Supp. 2d at 438 (noting that the "defendant's vague allegations that the plaintiff's amounts are 'excessive' are insufficient to bar recovery"); *Abraham v. District of Columbia*, 338 F. Supp. 2d at 124 (applying the *Laffey* Matrix where the defendant submitted no evidence to support its request to reduce rates). Because the plaintiff has met her burden of

13

providing evidence that shows her attorneys' skill, experience and reputation, the court concludes that she has established a presumption of the reasonableness of the billing rates sought in her fee application.

Accordingly, the court will evaluate each of her attorneys' respective hourly rates according to the U.S. Attorney's Office *Laffey* Matrix.[3] In doing so, the court addresses specific objections raised by the defendants.

### i. Fatmata Barrie

The plaintiff seeks an hourly billing rate of $300.00 for Fatmata Barrie, who was admitted to the D.C. Bar in February 2004. Adewusi Decl. ¶ 1. The defendants argue that the plaintiff fails to establish that Barrie possesses a level of skill and experience that justifies a $300.00 billing rate. Defs.' Opp'n at 11.

Attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102. Barrie performed work in November and December 2008, when she had been a member of the D.C. Bar for three years.[4] *See* Pl.'s Mot., Ex. A. The *Laffey* Matrix hourly rate for an attorney with Barrie's experience in the fall of 2008 is $225.00. "When the requested hourly rates are higher than those set forth in the *Laffey* Matrix, courts generally reduce the attorneys' hourly rates to the rates provided by the *Laffey* Matrix." *Alfonso*, 464 F. Supp. 2d at 7. The court accordingly reduces Barrie's hourly rate to $225.00.

---

[3] The plaintiff seeks an hourly rate of $350.00 for Christopher N. Anwah. Adewusi Decl. ¶ 5. Because the plaintiff's fee request does not include any charges relating to Anwah, it is not necessary to determine his proper hourly rate.

[4] The *Laffey* Matrix calculates hourly rates based on the number of years that one has been out of law school. *See generally* U.S. Atty's Office for D.C. *Laffey* Matrix 2003-2010, http://www.justice.gov/usao/dc/divisions/civil_laffey_matrix_8.html (last visited Aug. 8, 2011). Because the plaintiff does not indicate when Barrie graduated from law school, the court has calculated her appropriate hourly rate based on her bar admission date.

### ii. Annie Pressley

The plaintiff seeks hourly rates of $200.00 and $165.00 for Annie Pressley. Pl's Mot., Ex. A. Pressley is a "special education advocate" who graduated from the University of the District of Columbia School of Law in "2004[-]2005." Adewusi Decl. ¶ 2. She is not a licensed attorney nor a member of the D.C. Bar. Defs.' Opp'n at 12. The defendants contend that the IDEA does not require the DCPS to pay for the services of educational advocates. *Id.* The plaintiff asserts, however, that section (h) of the DCPS Guidelines permits payment of fees to educational advocates. Pl.'s Reply at 6. The plaintiff further argues that attorneys require the services of paralegals and advocates in order to adequately represent their clients. *Id.* at 6-7.

The court in *Bowman v. District of Columbia* held that court-appointed educational advocates may not recover attorney's fees under the IDEA. 496 F. Supp. 2d 160, 167 (D.D.C. 2007). The educational advocates in *Bowman*, however, were appointed by the court to make educational decisions for children who were wards of the district, so that the advocates effectively acted as "parents" under the IDEA. *See id.* Accordingly, even though they were licensed attorneys, they could not recover fees as educational advocates because they were not acting in an attorney-client capacity. *See id.*

Unlike the attorneys in *Bowman*, Pressley was employed by the Chris Anwah Law Firm, instead of being appointed by the court as an educational advocate. *See* Adewusi Decl. ¶ 2. Furthermore, Pressley's work on this matter was similar to that performed by the billing attorneys. *See* Pl.'s Mot., Ex. A. Because she is not a member of the D.C. Bar, however, Pressley is not entitled to attorney rates. *See Dickens*, 724 F. Supp. 2d at 120 (holding that attorneys not admitted to the D.C. Bar are not entitled to reimbursement, but awarding fees at

paralegal rates as equitable relief); *Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 112-13 (D.D.C. 2007). Pressley is described as a "paralegal" in the plaintiff's declaration, and the court accordingly reduces her hourly rate to $85.00, consistent with the rate charged by paralegals at the Chris Anwah Law Firm. *See* Adewusi Decl. ¶ 2, 7; *Dickens*, 724 F. Supp. 2d at 120 (awarding fees below *Laffey* rates because "[a]ctual billing practices factor into a court's discretionary assessment of the reasonableness of rates"). Because this hourly rate is already lower than the paralegal rate set forth in the *Laffey* Matrix, the court need not reduce the rate any further.

### iii. Samar Malik

The plaintiff seeks an hourly rate of $200.00 for Samar Malik. Adewusi Decl. ¶ 3. It appears that Malik was also not admitted to the D.C. Bar during the period for which attorney's fees are sought. *See id.* The defendants thus contend that Malik's practice was not authorized. Defs.' Opp'n at 12-13. Furthermore, even if her practice was authorized, they argue, the plaintiff has not provided sufficient evidence to suggest that Malik possesses "a level of experience and skill, or an adequate reputation" to support a $200.00 billing rate. *Id.* at 13. The defendants contend, therefore, that the hours claimed for Malik should be reduced to reflect a rate applicable to paralegals. *Id.*

Attorneys who are not admitted to the D.C. Bar are not entitled to reimbursement at attorney rates in IDEA proceedings. *See Dickens*, 724 F. Supp. 2d at 120; *Agapito*, 477 F. Supp. 2d at 112-13. Accordingly, the court reduces Malik's hourly rate to $85.00, the rate charged by paralegals at the Chris Anwah Law Firm. Because this hourly rate is already lower than the paralegal rate set forth in the *Laffey* Matrix, the court need not reduce the rate any further.

16

### iv. Mireya Amaya

The plaintiff seeks an hourly rate of $85.00 for Mireya Amaya, who is a paralegal. Adewusi Decl. ¶ 3. The defendants do not object to this rate. Defs.' Opp'n at 13. Therefore, the court's award reflects this hourly rate for Amaya.

### v. LaDonna Rogers

The plaintiff seeks an hourly rate of $250.00 for LaDonna Rogers, who was admitted to the D.C. Bar in July 2000. Adewusi Decl. ¶ 5. The defendants contend that the plaintiff fails to establish that Rogers possesses the background and experience necessary to support a $250.00 billing rate. Defs.' Opp'n at 14-15. As previously noted, attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102. Rogers performed work for this case in 2008, at which point she had been a member of the D.C. Bar for eight years. *See* Adewusi Decl. ¶ 5; Pl.'s Mot., Ex. A. The *Laffey* Matrix rate for an attorney with Rogers' experience in 2008 is $330.00 per hour. Because the plaintiff's requested hourly rate of $250.00 is below the rate set forth in the *Laffey* Matrix, the court deems it reasonable.

### vi. Georgina Oladokun

The plaintiff seeks an hourly rate of $250.00 for Georgina Oladokun, who was admitted to the D.C. Bar in January 2007. Adewusi Decl. ¶ 4. The defendants assert that Oladokun lacks the skill and reputation required to support a $250.00 billing rate. Defs.' Opp'n at 15-17. Again, attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102. Oladokun performed work in 2008, when she had been a member of the D.C. Bar for one year. *See* Adewusi Decl. ¶ 4; Pl.'s Mot., Ex. A. The *Laffey*

Matrix rate for an attorney with Oladokun's experience in 2008 is $225.00 per hour. The court accordingly reduces Oladokun's hourly rate to $225.00. *See Alfonso*, 464 F. Supp. 2d at 7.

### vii. Matt Mixon

The plaintiff seeks an hourly rate of $250.00 for Matt Mixon. Adewusi Decl. ¶ 6. Mixon was admitted to the D.C. Bar in October 2006. *Id.* The defendants argue that Mixon lacks the experience and skill required to support a $250.00 billing rate. Defs.' Opp'n at 17-19.

Attorney's fees are presumptively reasonable if they conform to the *Laffey* Matrix. *See, e.g.*, *Jackson*, 696 F. Supp. 2d at 102. Mixon performed work in 2008, when he had been a member of the D.C. Bar for two years. *See* Adewusi Decl. ¶ 6; Pl.'s Mot., Ex. A. The *Laffey* Matrix rate for an attorney with Mixon's experience in 2008 is $225.00 per hour. The court accordingly reduces Mixon's hourly rate to $225.00. *See Alfonso*, 464 F. Supp. 2d at 7.

### 3. Summary of Fees Allowed

In sum, the court awards to the plaintiff a total of $2,757.00 in attorney's fees and costs, after the adjustments summarized in the chart below.[5] According to the parties, the defendants have already paid the plaintiff $923.75, leaving a total unpaid balance of $1,833.25.

---

5  The plaintiff argues that her fee award should not be affected by the $4,000.00 fee cap imposed by the District of Columbia Appropriations Act. Pl.'s Reply at 7. The defendants, on the other hand, contend that the plaintiff's fee award is subject to the statutory fee cap. Defs.' Opp'n at 2. The court notes that in some instances, the District of Columbia is statutorily limited to a $4,000.00 fee cap in reimbursing attorney's fees in IDEA cases. *See* Pub. L. No. 110-161, 121 Stat. 1844 (2007). In this case, because the court's award of attorney's fees is less than the $4,000.00 fee cap, the court need not reach this issue.

| Name | Hours | Requested Hourly Rate | Adjusted Hourly Rate | Amount Allowed |
|---|---|---|---|---|
| Annie Pressley | 5.68 | $200.00 and $165.00 | $85.00 | $482.80 |
| Fatmata Barrie | 5.58 | $300.00 | $225.00 | $1,255.50 |
| Georgina Oladokun | 6.42 | $250.00 | $225.00 | $1,444.50 |
| LaDonna Rogers | 0.25 | $250.00 | $250.00 | $62.50 |
| Matt Mixon | 1.00 | $250.00 | $225.00 | $225.00 |
| Mireya Amaya | 4.18 | $85.00 | $85.00 | $355.30 |
| Samar Malik | 1.75 | $200.00 | $85.00 | $148.75 |
| | | | Fees Owed Before Any Reductions | $3,974.35 |
| | | | Fees Owed After Deducting $298.35 Conceded by Plaintiff | $3,676.00 |
| | | | **Total Awarded Fees After 25% Overall Reduction** | $2,757.00 |

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for attorney's fees and costs. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of September, 2011.

> RICARDO M. URBINA
> United States District Judge